IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SALENA GLENN,<br><br>                    Petitioner,<br><br>vs.<br><br>TERI BALDUF,<br><br>                    Respondent. | CASE NO. 3:22-cv-908<br><br>CHEIF DISTRICT JUDGE<br>SARA LIOI<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Petitioner Salena Glenn filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Glenn is in custody at the Ohio Reformatory for Women in Marysville, Ohio, pursuant to judgment in the Marion County Court of Common Pleas Case No. 19-CR-122. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed.

### Summary of Facts

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Third Appellate District summarized the facts underlying Glenn's conviction as follows:

> {¶2} On March 21, 2019, agents of a multi-jurisdictional drug task force conducted a search of a residence at 223 West Columbia Street, Marion, Ohio ("223 West Columbia") pursuant to a search warrant. Inside the residence, law enforcement officers located drugs, and Illya Green ("Green") and Kevin Swift ("Swift") were arrested. Outside the residence, law enforcement officers heard a noise and located Glenn attempting to leave the residence in her vehicle. During a subsequent search of Glenn's vehicle, law enforcement officers located substances which were later determined to be cocaine and a mixture of fentanyl and heroin.

> {¶3} On April 4, 2019, the Marion County Grand Jury issued a joint indictment charging Glenn, Green, and Swift with a variety of offenses. (Doc. No. 2). Specifically, the Marion County Grand Jury indicted Glenn on six counts: Count One of trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4), a first degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), (C)(4), a first-degree felony; Count Three of aggravated possession of fentanyl in violation of R.C. 2925.11(A), (C)(11), a second-degree felony; Count Four of tampering with evidence in violation of R.C. 2921.12(A), a third-degree felony; Count Five of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6), a fourth-degree felony; and Count Six of aggravated possession of drugs in violation of R.C. 2925.11(A)(1), (C)(1), a fourth-degree felony. (*Id.*). Count Two contained a major drug offender specification under R.C. 2941.1410 and Count Five contained a forfeiture specification under R.C. 2941.1417. (*Id.*). On April 8, 2019, Glenn appeared for arraignment and entered pleas of not guilty to the counts and specifications in the indictment. (Doc. No. 7).

{¶4} On May 31, 2019, Glenn filed a motion for additional discovery. (Doc. No. 37). In the motion, Glenn requested that the trial court compel the State to provide her with any and all video recordings, police reports, and documentation regarding controlled buys at 223 West Columbia on February 26, 2019, February 28, 2019, March 12, 2019, March 14, 2019, and March 20, 2019. (*Id.*). Glenn argued that the information was discoverable under Crim. R. 16 because it was "material to mitigation, exculpation, or impeachment." (*Id.*).

{¶5} On June 7, 2019, the State filed its memorandum in opposition to Glenn's motion for additional discovery. (Doc. No. 38). The State argued that, although the five prior controlled buys were referenced in the affidavit for the search warrant which was executed on March 21, 2019, neither Glenn nor her codefendants were charged with any crimes relating to those transactions. (*Id.*). Further, the State argued that Glenn failed to demonstrate that she would be prejudiced by non-disclosure of the controlled buys detailed in the search warrant affidavit. (*Id.*).

{¶6} On June 11, 2019, the trial court held a hearing on Glenn's motion for additional discovery. (Doc. No. 39). At the conclusion of the hearing, the trial court denied Glenn's motion for additional discovery. (June 11, 2019 Tr. at 30). (*See* Doc. No. 39).

{¶7} The case proceeded to a jury trial on August 22, 23, and 26, 2019. (*See* Doc. No. 113). Prior to the commencement of trial, the trial court dismissed Counts Five and Six of the indictment and the forfeiture specification that related to Count Five of the indictment. (*Id.*). At the close of the State's case, Glenn made a motion for acquittal under Crim.R. 29, which the trial court denied. (Aug. 26, 2019 Tr. at 709-717). On August 26, 2019, the jury found Glenn guilty of all the remaining counts in the indictment and the major drug offender specification associated with Count Two. (Doc. Nos. 105, 106, 107, 108). (*See* Doc. No. 113).

3

> **{¶8}** A sentencing hearing was held on September 16, 2019. (Doc. No.113). Upon agreement of the parties, the trial court found that Counts One and Two merged for purposes of sentencing. (*Id.*). Accordingly, the State elected to sentence Glenn on Count Two. (*Id.*). The trial court sentenced Glenn to a mandatory term of 11 years in prison on Count Two, a mandatory term of 7 years in prison on Count Three, and 24 months in prison as to Count Four. (*Id.*). Further, the trial court ordered that the sentences should be served consecutively to each other for an aggregate prison term of 20 years. (*Id.*). The following day, the trial court filed its judgment entry of sentence. (*Id.*)

*State v. Glenn*, Case No. 9-19-64 (3d App. Dist. Feb. 1, 2021); Doc. 14, at 238–240.

**Relevant Procedural History**[1]

*State Court Proceedings*

In May 2019, Glenn filed a motion for additional discovery with the trial court. Doc. 14-1, at 34. The State opposed Glenn's motion, Doc. 14-1, at 40, and the trial court held a hearing in June 2019, Doc. 14-1, at 44. During the hearing, the parties discussed the discoverability and admissibility of certain evidence, which the trial court ultimately determined was not discoverable. Doc. 14-1, at 310–316. The trial court offered to consider the evidence at issue *in camera*, to further consider arguments raised by Glenn's trial counsel as to its relevance, but Glenn's trial counsel declined the trial court's offer for *in*

---

[1]    The procedural history has been identified as relevant through review of the parties' briefing to this Court and is not intended to provide an exhaustive description of all proceedings that may have occurred.

4

*camera* inspection. Doc. 14-1, at 315. The trial court denied Glenn's motion for additional discovery. Doc. 14-1, at 44.

The case proceeded to a jury trial on Counts One through Four of the indictment. Doc. 14-1, at 90–92. In August 2019, a jury in Marion County, Ohio, found Glenn guilty of all remaining counts and found a major-drug-offender specification applied to Count 2. Doc. 14-1, at 91. Glenn was sentenced to 11 years in prison on Ground 2 (which, on agreement of the parties, included Count 1 for sentencing purposes), 7 years in prison on Count 3, and 24 months in prison on Ground 4. *Id.* The trial court ordered Glenn's sentence to be served consecutively for a term of 20 years. *Id.*

*Direct Appeal*

Glenn timely filed a notice of appeal with the Third District Court of Appeals, Marion County, Ohio. Doc. 14-1, at 94, 117. Glenn raised three assignments of error on appeal:

1. The trial court's numerous errors involving evidentiary issues denied appellant the right to present a defense thereby violating her constitutional due process rights to a fair trial under the State and Federal Constitutions. (Record Reference: Transcript of Pre-Trial (Date 6/11/19), Tr. Vol. III, pp. 602-650).

2. The trial court erred in imposing a prison term consecutive to another prison term because there was no finding that the sentence was not disproportionate to any danger the defendant may pose to the public and the trial court failed to identify specific reasons in support of its finding that consecutive sentences were appropriate. (Record Reference: Judgment Entry).

3. The jury's verdicts were against the manifest weight of the evidence in violation of the United States Constitution and the Ohio Constitution. (Record Reference: Judgment Entry).

Doc. 14-1, at 122.

The State opposed Glenn's arguments, Doc. 14-1, at 145, and in February 2021, the Ohio court of appeals overruled Glenn's first and third assignments of error, *State v. Glenn*, 2021-Ohio-264, 2021 WL 321548 (Ohio Ct. App. 2021). The Ohio court of appeals sustained Glenn's second assignment of error, vacated her sentence, and remanded the case to the trial court for resentencing. *Id*.

In March 2021, Glenn filed a timely pro se notice of appeal with the Ohio Supreme Court. Doc. 14-1, at 226, 229. She asserted three propositions of law in support of her appeal:

1. The trial court's numerous errors involving evidentiary issues denied appellant the right to present a defense thereby violating her constitutional due process rights to a fair trial under the State and Federal Constitutions. (Record Reference: Transcript of Pre-Trial (Date 6/11/19), Tr. Vol. III, pp. 602-650).

2. The trial court erred in imposing a prison term consecutive to another prison term because there was no finding that the sentence was not disproportionate to any danger the defendant may pose to the public and the trial court failed to identify specific reasons in support of its finding that consecutive sentences were appropriate. (Record Reference: Judgment Entry).

3. The jury's verdicts were against the manifest weight of the evidence in violation of the United States Constitution and

6

the Ohio Constitution. (Record Reference: Judgment Entry).

Doc. 14-1, at 239–49.

In June 2021, the Ohio Supreme Court declined to accept jurisdiction over Glenn's appeal. Doc. 14-1, at 278.

*Petition to Vacate*

In January 2021, Glenn filed two petitions to vacate or set aside her judgment of conviction or sentence, one on January 28 and the other on January 29. *See* Doc. 14-1, at 361, 465. The State opposed, arguing that Glenn had either raised or could have raised these claims on direct appeal. Doc. 14-1, at 575, 577. Glenn replied. Doc. 14-1, at 580, 582. The state trial court dismissed and denied Glenn's petitions, finding that the January 29 filing was untimely under Ohio law and the January 28 filing was barred by Ohio's doctrine of res judicata. Doc. 14-1, at 584–88. Glenn did not appeal to the court of appeals.

*Resentencing*

In March 2021, the state trial court held a resentencing hearing. Doc. 14-1, at 590. Following the hearing, the trial court sentenced Glenn to a mandatory term of 11 years on Count 2, a mandatory term of 7 years on Count 3, and 24 months on Count 4. *Id.* It ordered her to serve her sentences consecutively for a total term of 20 years. *Id.*

7

*Delayed Appeal*

In May 2022, Glenn filed a pro se notice of appeal and motion for leave to file a delayed appeal with the court of appeals. Doc. 14-1, at 593, 595. In August 2022, the court of appeals denied leave to file a delayed appeal, finding that Glenn failed to provide sufficient reasons for her untimely appeal. Doc. 14-1, at 608.

*Ohio Appellate Rule 26(B) Delayed Application for Reopening*

In June 2022, Glenn filed a pro se delayed application for reopening her direct appeal under Ohio Appellate Rule 26(B).[2] Doc. 14-1, at 279–340. In her application, Glenn alleged that she was denied effective assistance of appellate counsel and claimed that she did not make certain arguments on direct appeal due to ineffective assistance of appellate counsel. Doc. 14-1, at 290–93. Glenn argued that she failed to file an application to reopen her direct appeal because of the amount of time it took her to receive the trial transcript. Doc. 14-1, at 280.[3] The court of appeals denied Glenn's application for reopening as untimely

---

[2]    A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id.*

[3]    Rule 26(B) doesn't require the applicant to file transcripts. *See* Ohio App. R. 26(B)(e) (an application must contain "[a]ny parts of the record available to the applicant"); *State v. Marcum*, No. CA96-03-049, 2002 WL 42894, at *2 (Ohio Ct. App. Jan. 14, 2022) ("Nothing in the rule requires counsel to provide or make available a copy of the trial transcript to an applicant for purposes of preparing an App.R. 26(B) application.").

and found that she failed to show good cause for her untimely filing. Doc. 14-1, at 341–42. Glenn did not appeal to the Ohio Supreme Court.

*Federal Habeas Corpus Petition*

Glenn filed a petition for federal habeas corpus relief in May 2022. In it, Glenn raised the following five grounds for relief, which are reproduced as written:

> GROUND ONE: Salena Glenn's right to a fair trial, right to present a complete defense 6th Amendment Right to a speedy trial.

> GROUND TWO: Salena Glenn was denied due process, abuse of discretion, evidence was insufficient to support the guilty verdict 5th & 14th amendment.

> GROUND THREE: Ineffective assistance of counsel plain error 6th Amendment & 14th Amendment.

> GROUND FOUR: Illegal Search & Seizure, Confrontation of Adverse Witness 4th and 6th Amendment.

> GROUND Five: The trial court errored when it did not instruct the jury of the joint indictment; there was no motion to file to separate joint indictment. 5th, 6th, 14th Amendment.

*See* Doc. 1, at 5–13.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and

9

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id*. (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id*.

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the

factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent

and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been

12

established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at

13

231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1. The Ground One claims are not cognizable and are procedurally defaulted.*

The Court notes that, with the exception of Glenn's enumerated ground in her Petition, neither party presents legal argument related to Glenn's Ground One claim independently from the other claims raised. While the Court has liberally construed Glenn's arguments, her arguments are defaulted or otherwise not cognizable for the reasons described. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[l]iberal construction [of a pro se habeas petition] does not require a court to conjure allegations on a litigant's behalf") (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

In Ground One, Glenn appears to argue that her right to present a complete defense was violated when: (1) the trial court denied the admission of certain allegedly exculpatory evidence related to five previous controlled buys, and (2) the jury was removed from the courtroom during a proffer of testimony from one of the officers who performed the search that resulted in Glenn's arrest. Doc. 1, at 5. While Glenn presented these two evidentiary issues on direct appeal, Doc. 14-1, at 128–34, 239–245, not all aspects of Glenn's Ground One claim were presented in her direct appeal. Specifically, she references a "letter from Illya Green stating the drugs were his." Doc. 1, at 5. And she asserts for the first time in her traverse: "trial attorney deficiency

performance for not preserving the evidence by not properly sealing for further review and refusing the trial court and the state the opportunity to review the exculpatory evidence that was potentially available for review." Doc. 20, at 11. Glenn also asserts that her attorney's deficiencies, both trial and appellate, "were several cumulative effect of errors."[4] Doc. 20, at 11.

To the extent that the arguments raised in Glenn's Ground One were raised on direct appeal, the Court must defer to the state appellate court's decision on the merits absent a showing that the state court's decision was: (1) contrary to or involved an unreasonable application of clearly established federal law; or (2) resulted in an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Glenn has not argued that the court of appeal's determination was contrary to or an unreasonable application of clearly established federal law. She also does not allege that the court of appeal's decision was based on an unreasonable determination of the facts. In fact, Glenn does not make any argument related to the court of appeal's decision.

Even if Glenn had challenged the court of appeal's decision, the basis of Glenn's argument is less than clear, especially given that Glenn doesn't discuss

---

[4]     Glenn does not develop any further argument as to cumulative error but even if she did it is not cognizable. *Williams*, 460 F.3d 789, 816 (6th Cir. 2006) ("cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue."). Additionally, the court of appeals rejected her prior cumulative error arguments on direct appeal. *Glenn*, 2021 WL 321548, at *6. But Glenn has not challenged the court of appeals' determination.

that court's decision. Before the court of appeals, Glenn framed her first issue as one involving "numerous errors" that "denied [her] the right to present a defense thereby violating her due process rights." Doc. 14-1, at 128. Before discussing the errors that Glenn specifically alleged, the State responded that Glenn's argument implicated "[t]he doctrine of cumulative error" and argued that "to find cumulative error, 'a court must first find multiple errors.'" *Id*. at 153 (citation omitted).

In considering Glenn's issue, the court of appeals explained that Glenn argued that when it failed to give her evidence about the five previous controlled buys, the State withheld material evidence. *Glenn*, 2021 WL 321548, at *5; *see* Doc. 14-1, at 34. The trial court, however, had offered to the review the evidence in camera. But Glenn's counsel declined "the trial court's offer to review the requested material." *Glenn*, 2021 WL 321548, at *5. As a result of counsel's decision, the trial court did not review the potential evidence and it was "never made part of the record." *Id*. Based on this background, the court of appeals concluded that there was no basis to "find that the evidence requested was related to the indictment or that it was material to the preparation of Glenn's defense." *Id*. In other words, the court of appeals rejected Glenn's argument as to the controlled buys because her counsel's decision foreclosed the court's ability to rule in her favor.

Further, the court of appeals reasoned, "[u]nder the doctrine of cumulative error, under which Glenn makes her argument, a court must first

find multiple errors committed at trial." *Glenn*, 2021 WL 321548, at *6. And because the court had rejected the first leg of Glenn's two-leg cumulative-error argument, even if the trial court erred by not admitting Green's statements, Glenn's cumulative-error argument failed. *Id.*

Since Glenn says nothing about the court of appeals decision as to the controlled buys evidence and Green's statements to a police officer, there is no basis to conclude that she could meet her burden under 28 U.S.C. § 2254(d)(1) as to that issue.

To the extent that the Court can discern Glenn's argument related to Green's statements, she appears to argue that the state trial court violated Ohio Rule of Evidence 801(d)(2)(E) (statements by a co-conspirator) by withholding exculpatory evidence from the jury in violation of her federal constitutional rights.[5] *See* Doc. 20, at 10, 15. But alleged violations of state evidentiary rules are not cognizable on federal habeas. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). And the reference to rule 801(d)(2)(E) is unexplained; Glenn did not raise the rule before the court of appeals and that court did not decide Glenn's appeal on the basis of this rule. So Glenn failed to fairly present the issue to Ohio's courts.

---

[5]     Although Glenn refers to federal rule of evidence 801(d)(2)(E), Doc. 20, at 10, her trial took place in state court. So I construe her reference to the federal rule as a reference to the corresponding Ohio rule of evidence. *See* Doc. 14-1, at 188–98 (citing Ohio rules of evidence).

Further, under Ohio's res judicata rule, because Glenn could have raised this issue on direct appeal, it is now too late for her to raise it in Ohio's courts. *State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996) (reaffirming the rule from *State v. Perry*, 226 N.E.2d 104 (1967)). Ohio's courts consistently enforce this rule, *see State v. Cole*, 443 N.E.2d 169, 170–71 (1982), and the Sixth Circuit has held that Ohio's res judicata rule is an adequate and independent state ground on which to procedurally bar review of a habeas claim, *see Coleman v. Mitchell*, 268 F.3d 417, 427–32 (6th Cir. 2001); *see also Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007). So even if this Court were to construe Glenn's first ground as raising a constitutional issue related to Ohio rule of evidence 801(d)(2)(E), the issue is procedurally defaulted. *See Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014).

Also contained within Glenn's Ground One argument are vague references to a letter written by Green. Doc. 1, at 5. The letter from Green does not appear to have been presented at trial and Glenn has not developed any argument that would support expansion of the record to allow a federal habeas court to consider this new evidence. Elsewhere in her traverse, and without any supportive analysis, Glenn asserts that she is entitled to an evidentiary hearing. *See* Doc. 20, at 18. But this request was not presented in her petition, it is not clearly connected to Green's letter, and she does not make any argument to demonstrate why she is entitled to an evidentiary hearing. Habeas petitioners may only obtain an evidentiary hearing if their claim "relies

on a new," retroactively applicable "rule of constitutional law," or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Glenn does not rely on a new constitutional rule and does not claim that she exercised due diligence. Thus, Glenn has not made any showing sufficient to justify expansion of the record at this juncture such that the Court should, or could, consider Green's letter.

Glenn appears to argue that Green's letter and the other evidence referenced in her Ground One were not presented at trial due to trial counsel's ineffectiveness. *See* Doc, 1, at 5; Doc. 20, at 11–12. But as discussed in relation to Ground Three, Glenn has defaulted all claims of ineffective assistance of counsel. Alleged ineffective assistance of counsel, therefore cannot provide cause to excuse her default. The Court need not address the prejudice prong of that evaluation because the cause-and-prejudice test is "'in the conjunctive.'" *Murray v. Carrier*, 477 U.S. 478, 494–96 (1986) (citation omitted). Failure to address both prongs of the test is thus "fatal" to a habeas petitioner's effort to meet the test. *Thacker v. Rees*, 841 F.2d 1127, 1988 WL 19179, at *6 n.4 (6th Cir. 1988) (unpublished); *see Hockenbury v. Sowders*, 718 F.2d 155, 160 (6th Cir. 1983) ("The 'cause' and 'prejudice' requirement ... is in the conjunctive. Not finding 'cause' in this case, we need not address the issue of prejudice."); *Jones v. Tibbals*, No. 5:13-cv-1171, 2014 WL 1806784, at *8 (N.D. Ohio May 7, 2014) ("Since the cause and prejudice standard is in the conjunctive, Petitioner's failure to show 'cause' ends the analysis.").

Even if the Court did consider the prejudice prong, Glenn's only argument related to prejudice is that alleged errors prevented her from showing her innocence. Throughout Glenn's Ground One claims are statements that the trial court's rulings and trial counsel's performance, which prevented the admission of certain evidence, precluded her from proving her innocence. *See e.g.*, Doc. 20, at 10–12. A claim of actual innocence "requires the petitioner to support [her] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Statements simply asserting that she was innocent does provide sufficient factual support for a claim of actual innocence under the federal habeas corpus review. *See Bousley v. U.S.*, 523 U.S. 614, 623–624 ("It is important to note ... that 'actual innocence' means factual innocence, not mere legal insufficiency.") (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Because Glenn's Ground One claims are either not cognizable or procedurally defaulted, I recommend her Ground One be dismissed.

*2. The Ground Two claims are not cognizable and are procedurally defaulted.*

Glenn's Ground Two claims generally pertain to the sufficiency of the evidence presented at trial and additional evidentiary claims which are, respectively, not cognizable and procedurally defaulted. Doc. 1, at 7.

21

Glenn asserts that her manifest weight claim is preserved for habeas review. Doc. 20, at 14. While Glenn did what is generally required to preserve a claim for federal habeas review, i.e., presenting the claim to the state courts on direct appeal, this presentation does not mean that her claim is inherently proper for federal habeas consideration. Indeed, manifest weight of the evidence claims are generally not cognizable for federal habeas review. *See Jaeger v. Wainwright*, No. 1:19-cv-2853, 2023 WL 6554265, at *22 (N.D. Ohio Sept. 1, 2023) (citing and discussing cases), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023). But the Sixth Circuit has explained that manifest weight claims may preserve sufficiency of the evidence claims. *See Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007). So, to the extent that Glenn's claim could be construed as a sufficiency of the evidence claim it may be cognizable if it is properly preserved. But it was not properly preserved.

A federal habeas court "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). The court of appeals rejected Glenn's manifest weight claim based on Ohio Appellate Rule 16(A)(7), which is an independent and adequate ground. Doc. 14-1, at 216–18. A number of courts have held that Ohio Appellate Rule 16(A)(7) is an adequate and independent basis on which a state may rely to

foreclose habeas relief. *See Hayes v. LaRose*, No. 5:14-cv-2461, 2016 WL 1599807, at *6 (N.D. Ohio Jan 27, 2016) ("Courts in both this district and the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent state rule upon which the state may foreclose federal habeas review.") (collecting cases), *report and recommendation adopted by* 2016 WL 1558764 (N.D. Ohio Apr. 18, 2016); *see also Jennings v. Harris*, No. 1:19-cv-01678, 2022 WL 3142888, at *19 (N.D. Ohio July 6, 2022), *report and recommendation adopted*, 2022 WL 3151187 (N.D. Ohio Aug. 5, 2022). Because this state rule is "firmly established and regularly followed," Glenn's claim is not subject federal habeas review unless she can excuse her procedural default. *See Smith v. Eppinger*, No. 21-3366, 2022 WL 13892512, at *2 (6th Cir. 2022).

In the "supporting facts" portion of her petition, Glenn appears to mention certain additional evidentiary claims and challenges to the trial court's rulings. Doc. 1, at 7. But to the extent that the Court discern these claims, Glenn did not raise them on direct review. *See* Doc. 14-1, at 117–39, 228–49. The time for appeal has now passed, barring these evidentiary claims under Ohio's res judicata doctrine. *See Coleman*, 268 F.3d at 427. And, to the extent that some of these claims were raised in Glenn's petitions for post-conviction relief, see Doc. 14-1, at 361–64, 465–68, those petitions were denied as untimely and barred by Ohio's doctrine of res judicata. *See* Doc. 14-1, at 584–88. the claims in them are thus also defaulted.

A habeas court can "consider the merits of procedurally defaulted claims" if "the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams*, 460 F.3d at 805–06. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice" to establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But that ineffectiveness claim "must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id*. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)); *see Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005) ("To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted.").

As explained in more detail as to Ground Three, Glenn has procedurally defaulted an ineffective assistance of appellate counsel argument. Doc. 20, at 14–15. Glenn, therefore, cannot now raise an ineffective assistance of appellate counsel claim as cause for her default.

Because Glenn's Ground Two claims are either not cognizable or procedurally defaulted, I recommend that Ground Two be dismissed.

*3. The Ground Three claims are procedurally defaulted.*

Glenn's Ground Three claim is for ineffective assistance of counsel as to both her trial and appellate counsel's performance in the state court

24

proceedings. Doc. 1, at 8. Glenn also asserts ineffective-assistance arguments in relation to various Grounds throughout her petition and traverse. *See e.g.*, Doc. 1, at 5–7; Doc. 20, at 11, 12, 15, 23. In an effort to streamline the analysis of Glenn's various ineffective assistance claims—which generally are ineffective trial counsel for failure to assert certain evidentiary issues and ineffective appellate counsel for failure to raise trial counsel's alleged deficiencies and among other issues on direct appeal—are addressed together below.

Ohio has a "dual-track system" for raising ineffective-assistance-of-counsel claims. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016). Grounds for relief that are "based on evidence wholly *within* the trial record must be brought on direct appeal." *Id*. "[C]laims based on evidence *outside* the trial record," on the other hand, "cannot be brought on direct review and must be raised in a petition for state post-conviction relief." *Id*. And if an ineffective-assistance claim "relies on evidence within the trial record" such that the claim could have been brought on direct appeal, Ohio's res judicata rule will bar post-conviction review of the claim. *Id*. "Ohio courts routinely apply the res judicata rule to" such claims. *Smith v. Bagley*, 642 F. App'x 579, 586 (6th Cir. 2016) (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)); *see Williams*, 460 F.3d at 806 ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.") (citing *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982)).

25

Glenn's ineffective assistance arguments as to her trial counsel are based on the record. See Doc. 1, at 8 (claiming that counsel failed to subpoena Green, file motions, request evidence, preserve issues, or move to suppress). Glenn admits that she did not raise trial counsel's alleged ineffectiveness on direct appeal. Doc. 1, at 6. But Glenn argued in a delayed Rule 26(B) application that appellate counsel should have argued that trial counsel was ineffective for failing to assert ineffective assistance of trial counsel and other alleged deficiencies. *See* Doc. 14-1, at 279.

As an initial matter, an Ohio Rule 26(B) application does not preserve the underlying claim of error. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  So Glenn has never presented to Ohio's courts an ineffective assistance claim as to her trial counsel. And it is now too late for her to do so. *See Hill*, 842 F.3d at 936; *Williams*, 460 F.3d at 806.

Further, the court of appeals denied Glenn's delayed Rule 26(B) application because it was untimely under Ohio procedural rules and because Glenn failed to show good cause to excuse that untimeliness. *See* Doc. 14-1, at 341–42. Glenn did not appeal this decision to the Ohio Supreme Court. So she has doubly defaulted this claim. First, because Glenn failure to comply with Ohio's procedural rule is an adequate and independent basis to reject her claim, Glenn has defaulted her ineffective assistance of appellate counsel claim. *See Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir. 2008); *Parker v. Bagley*, 543 F.3d 859, 861–62 (6th Cir. 2008) (claims raised in a Rule 26(B)

26

Application that the Ohio court of appeals rejected as untimely are procedurally defaulted). Second, Glenn also procedurally defaulted her ineffective assistance of appellate counsel claim because she failed to appeal the court's denial of her delayed Rule 26(B) application. And because Glenn's ineffective assistance of appellate counsel claims are defaulted, her appellate counsel's alleged ineffectiveness cannot provide cause to excuse the default of any of her claims, including her ineffective assistance of trial counsel claims. *See Edwards*, 529 U.S. at 451.

Because all of Glenn's ineffective assistance claims are procedurally defaulted, she cannot raise them now unless she can show cause and prejudice for her default.

As to cause, Glenn claims that she

> has demonstrated cause, showing that all the actions taken against her deterring to comply. The petitioner had no way to prevent the cause, which prejudiced her to the extent of a fair trial and proving her innocence. … Glenn had two (2) attorney's, trial and appellate, neither attorney raised the evidence available to them, which was both material and exculpatory, that would have proved Glenn's actual innocence which resulted in a fundamental miscarriage of justice.

Doc. 20 at 17–18. It appears that Glenn is attempting to assert cause for her default based on the combination of all of her attorney's alleged failures to provide adequate representation. This argument ignores the fact that Glenn failed to comply with state procedural rules to present her ineffective assistance of appellate counsel claim or otherwise appeal the denial of that

claim based on state procedural rules. Glenn does not present any argument as to cause for her failure to properly raise an ineffective appellate counsel claim in state court. As a result, Glenn fails to show cause to excuse her default of both ineffective appellate counsel claims because her procedurally barred ineffective appellate counsel claim cannot preserve her trial counsel claim. *Edwards*, 529 U.S. at 451. Because Glenn has not shown cause, the Court need not address whether there was actual prejudice. *Hockenbury*, 718 F.2d at 160 ("The 'cause' and 'prejudice' requirement ... is in the conjunctive. Not finding 'cause' in this case, we need not address the issue of prejudice.").

Because Glenn has not excused her default, she cannot raise any of her ineffective assistance claims now unless Glenn can show that she suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. As discussed above, a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Glenn has not provided the required support to demonstrate her actual innocence. The evidence that she argues would show her innocence is not new and was presented to the trial court; rather it was not admitted based on the trial court's evidentiary rulings or, in the case of Green's letter, the evidence existed

at the time of trial but was not presented. *See Supra*, at 15–21. As discussed in relation to Ground One, Glenn has not made any cognizable argument as to why the trial court's evidentiary rulings are appropriate for federal habeas review. Glenn, therefore, has not demonstrated that her procedural default should be excused.

Glenn's Ground Three claims should be dismissed as procedurally defaulted.

*4. The Ground Four claims are not cognizable and are procedurally defaulted.*

Glenn appears to next argue that the evidence upon which her arrest and ultimate conviction were based was illegally obtained in violation of her Fourth Amendment rights. Doc. 1, at 11; *see* Doc. 20, at 23.

To the extent that Glenn is arguing that her Fourth Amendment rights were violated due to an improperly executed search warrant, any such claims are generally not cognizable. If a state has made "available [an] avenue for [a habeas petitioner] to present his claim to the state courts," the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976) "prohibits federal habeas corpus review of [the petitioner's] Fourth Amendment claim." *Good v. Berghuis*, 729 F.3d 636, 637, 639 (6th Cir. 2013). Ohio provides an "adequate" "mechanism" to raise Fourth Amendment claims. *See Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigating Fourth Amendment claims); *See also, e.g., Dotson v. Harris*, No. 4:19-cv-1237, 2020 WL 907642, at *7 (N.D.

Ohio Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 906344 (N.D. Ohio Feb. 25, 2020).

Additionally, even if Glenn's Fourth Amendment claims were cognizable, which they are not, Glenn's Ground Four claims could have been, but were not, presented at trial or during her direct appeal. And it is now too late for her to present them in a state post-conviction petition. *See* Doc. 14-1, at 587 (rejecting Glenn's post-conviction petition based in part on res judicata). So her claims are procedurally defaulted. *Williams*, 460 F.3d at 806.

Further, Glenn does not attempt to show cause to excuse her failure to raise her Ground Four arguments on direct appeal. Instead, Glenn argues that she attempted to assert these issues in a petition for post-conviction relief, which she recognizes was deemed untimely by the state trial court. Doc. 20, at 23. She also indicates that she "plans to present this error to the appellate court." Doc. 20, at 23. Neither of these assertions affects the Court's procedural default assessment because they only further show that Glenn has not fairly, or timely, presented her Ground Four claims to the appropriate state courts. And claims raised in a post-conviction petition that the court denies as untimely or barred by res judicata are procedurally defaulted for federal habeas purposes. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 219 (6th Cir. 2019) (claims raised in a post-conviction petition that the state court denies as untimely are procedurally defaulted) (citing *Walker v. Martin*, 562 U.S. 307, 310–11 (2011)); *Coleman*, 268 F.3d at 427) (claims raised in a

30

post-conviction petition that the state court denies on the basis of res judicata are procedurally defaulted) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Glenn makes no argument pertaining to cause and prejudice for her failure to fairly present her claims through the state court proceedings.

Glenn's Ground Four claims should be dismissed as not cognizable and procedurally defaulted.

> *5. The Ground Five claims are procedurally defaulted.*

Glenn's Ground Five claim asserts that the trial court erred by not instructing the jury that Glenn was indicted in a joint indictment and that her trial counsel erred by not moving to "separate [the] joint indictment." Doc. 1, at 13.[6] Glenn never raised this issue at any time on direct appeal or otherwise. And it is now too late to do so. Glenn's Ground Five claim is thus procedurally defaulted. *Williams*, 460 F.3d at 806.

Glenn has not argued cause and prejudice for her failure to raise these claims. In fact, Glenn's traverse does not distinguish any separate argument related to her Ground Five claims.

---

[6]     Contained within Glenn's Traverse is a single-sentence argument that "Petitioner['s] right to a speedy trial was violated when she was not brought to trial within 90 days. R.C. 2945.71." Doc. 20, at 26. But claims raised for the first time in a traverse are forfeited. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper). Further, Glenn does not develop any speedy trial argument beyond this sentence and there is no indication from Glenn's petition that she intended to raise a speedy trial violation.  Moreover, Glenn does not appear to invoke her federal right to a speedy trial. Instead, she cites only Ohio's speedy trial statute without any developed argument. So Glenn has forfeited this argument.

**Conclusion**

For the reasons set forth above, I recommend that Glenn's Petition be dismissed.

Dated: May 23, 2024

<u> /s/ James E. Grimes Jr. </u>
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).